## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

AZARIAH ISRAEL,

      Plaintiff,

v.                                  Case No: 8:22-cv-79-CEH-AEP

CITY OF TAMPA,

      Defendant.

_____

## ORDER

      This cause comes before the Court on Defendant City of Tampa's Motion for Summary Judgment (Doc. 37), Plaintiff Azariah Israel's response in opposition (Doc. 44), and Defendant's reply (Doc. 49). In this employment action, Plaintiff alleges that he was discriminated and retaliated against in violation of the Americans with Disabilities Act ("ADA"). Defendant seeks summary judgment as to both claims.

      Upon review and consideration, and being fully advised in the premises, the Court will grant the motion for summary judgment.

## I.    FACTS[1]

### A. Plaintiff's History with the Police Department and Medical Conditions

      Plaintiff served as a police officer with the Tampa Police Department ("TPD") between 2009 and 2021. An arbitrator who reviewed his service history described his

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including declarations and exhibits, as well as the Stipulation of Agreed Facts (Doc. 48).

record during "the great part of his employment as a Tampa Police Officer" as "enviable." Doc. 37-2 at 40.   He received consistently positive performance evaluations until 2020, indicating that he "was a very satisfactory or better police officer throughout his tenure." *Id.* at 36-39.

At some point during his time with the TPD, Plaintiff was diagnosed with depression and symptoms of post-traumatic stress disorder. Doc. 37-4 at 19-24, 93-97. His conditions routinely caused him to have trouble sleeping, which interfered with his ability to concentrate during the day. Doc. 12 ¶¶ 19-21.  Plaintiff received regular mental health treatment, as well as other medical treatment, at a Veterans Health Administration hospital run by the Department of Veterans Affairs ("VA"). Doc. 37-4 at 9-14.  In December 2019, his treatment provider applied for intermittent leave through the Family Medical Leave Act ("FMLA") on his behalf, explaining that it would be medically necessary for Plaintiff to be absent from work once every two weeks due to appointments or adjustments to his medication. Doc. 37-6.  Defendant approved the FMLA request. Doc. 37-5.  Plaintiff's supervisors were aware that he was approved for intermittent FMLA leave, but they did not know the medical condition on which it was based. *See* Doc. 37 at 5; Doc. 12 ¶ 26.

In February 2020, Plaintiff received a new squad assignment in a different district than the one in which he had spent most of his career. *See* Doc. 37 at 4.  His immediate supervisor, Sergeant Robin Polk, stated that she noticed Plaintiff exhibit a variety of what she described as "not typical behaviors" beginning in early March. *Id.*;

Doc. 37-7.  The behaviors included going outside of the chain of command on more than one occasion. *Id.*

In late May of 2020, the city was placed in a state of emergency because of civil unrest in the aftermath of George Floyd's death. Doc. 37 at 8.  As a result, Sergeant Polk ordered her entire squad to report for duty at 10:00 AM on May 31. Doc. 37-10 at 2.  Plaintiff initially told her he would report at 2:00 PM due to a childcare issue, but he did not arrive at that time or communicate a change to her. *Id.*  When she contacted him at about 3:00 PM, he responded that he would not have childcare until the following day. *Id.*  The next day, two minutes into his scheduled shift, he notified Sergeant Polk that he would be taking FMLA leave. *Id.*; *see also* Doc. 37-9.  The TPD initiated an investigation into Plaintiff's May 31 and June 1 actions, which it believed constituted policy violations. Doc. 37-14 at 2.  The investigation had not concluded by August 2020. *Id.*  During the investigation, Plaintiff's treatment provider submitted a modified FMLA request stating that the frequency of his intermittent leave would need to be increased to four days every two weeks, "[d]ue to increased severity of symptoms." Doc. 37-6 at 5.

**B. August 2020 Incident**

Plaintiff did not work during most of July 2020 because of planned travel and COVID-19 quarantine requirements. Doc. 37-8.  Although he was scheduled to return to work on August 5, 2020, he notified Polk the week before that he would be taking FMLA leave that day. Doc. 37-7 at 4.

On the evening of August 4, turning into the early morning of August 5, Plaintiff and his family returned home from a trip to the Virgin Islands. Doc. 37-4 at 138. Soon after they got home, Plaintiff's wife called the TPD to report a domestic dispute. *Id.*; Doc. 37-24 at 23. Plaintiff told responding officers that he refused to give his wife the keys to the car she normally used because he intended to "put a tracker on it for the safety of his children." *Id.* at 24. He explained in his deposition that she had previously tried to abscond with the children when they were having marital problems. Doc. 37-4 at 140-141. His wife did not report any physical violence, and both he and his wife told the officers that they intended to divorce. Doc. 37-24 at 23-24. The police determined that no criminal acts were committed. Doc. 37-14 at 1-2. Plaintiff then left his home for the night. *Id.* at 2.

The following afternoon, August 5, TPD responded to a second call at Plaintiff's home. Doc. 37-24 at 26. Plaintiff's wife reported that he had physically abused one of their sons through excessive discipline while they were on vacation. *Id.* at 28. Plaintiff denied the allegation. *Id.* at 32-33. The child abuse investigation was closed on August 13, with the investigator noting that he could not "establish a criminal offense has occurred." Doc. 37-24 at 35.

The captain of Plaintiff's unit, Eric DeFelice, was notified on August 5 that there had been a second call to Plaintiff's residence in less than 24 hours. Doc. 37-14 at 3. DeFelice explained that he decided to go to Plaintiff's home while the investigating officers were there, to "check on [Plaintiff's] wellbeing"; the parties agree he was not acting in an investigatory capacity. *Id.*; Doc. 48 at 1. DeFelice and Plaintiff

4

spoke for about two hours. Doc. 37-14 at 3.  Plaintiff informed DeFelice that he was

going through marital problems and that he suffered from PTSD. *Id.*; Doc. 48 at 1.[2]

DeFelice wrote down his observations from their conversation in a detailed

memorandum dated August 6, 2020. Doc. 37-14 at 3.  He wrote that Plaintiff was:

> very emotional, exhibiting signs of severe stress and anxiety.  He
> was fidgety, could not sit still and was making very animated hand
> gestures.  He had numerous angry outbursts, was talking to
> himself, and also was incoherently mumbling.
>
> When Ofc Israel was questioned by officers he had difficulty
> focusing, would forget the question that was asked and would
> continue to discuss matters even after the interviewers moved on.
>
> On several occasions I observed Ofc Israel continuously bang his
> open hands against his head while talking to himself.  He called
> himself stupid and had quiet conversations with himself.

*Id.*  DeFelice decided to relieve him from duty and place him on paid administrative

leave. *Id.*; Doc. 48 at 2.  The administrative leave notification stated that it was "not a

disciplinary measure, but based on your recent involvement as a subject in an

investigation." Doc. 37-12.

According to DeFelice, Plaintiff agreed to voluntarily turn over his personal

firearms for safekeeping once DeFelice placed him on administrative leave. Doc. 37-

14 at 4; *see also* Doc. 37-24 at 26.  Plaintiff then left his home for the night. Doc. 37-14

at 4.

---

[2] Although the Complaint alleged that Plaintiff's wife informed DeFelice about his diagnosis,
Doc. 12 ¶ 26, Plaintiff has stipulated that he informed DeFelice that he suffered from PTSD.
Doc. 48 at 1.

Polk learned about Plaintiff's administrative leave during the evening of August

5. Doc. 37-7 at 4.   She reached out to Plaintiff by text message, resulting in the

following exchange:

> Polk:  FYI—heard you have had a day.  Don't worry about work and if u need resources feel free to reach out.  I have both civilian and police resources ready to help fellow officers and veterans…take care of yourself and let me know if we can assist in any way.
>
> Israel: I just don't know what to say after today…thanks for letting me know
>
> Polk: Ur well being is important to all of us. We are family as far as I am concerned and we all need an outlet :)
>
> Israel (11:45 PM): Sarge, I feel like ima do something stupid…I really need to go back to my family in Jacksonville…I need to be with my mom and my brothers…I can't stay here…not good to be here…I don't want to be police no more….
>
> Polk (5:03 AM): Azariah, just waking up to this text.  Are you ok?
>
> Israel (9:35 AM): I'll be ok, thx

Doc. 37-13 at 2-5 (ellipses in original).

Polk and DeFelice met Plaintiff at a doctor's office the following morning,

August 6. Doc. 37-7 at 4-5.  According to Polk, Plaintiff told her he did not remember

sending the 11:45 PM text message because he had been drinking. *Id.* at 5.  She also

said that he "started hitting his head with his hand," "saying he was stupid for taking

his wife back," and seemed to have difficulty finding words and completing simple

tasks. *Id.*  DeFelice suggested to Plaintiff that he allow himself to be evaluated for

voluntary commitment, and he agreed. *Id.*  The three of them traveled to the VA

hospital for the evaluation. *Id.*  Plaintiff was released from the hospital later that day. Doc. 37-14 at 4.  He met with Polk and DeFelice again on August 7 and appeared to be in a much calmer state of mind. *Id.* at 5.

### C. Administrative Actions and Procedural History

After taking custody of his personal firearms on August 5, Defendant advocated to prevent Plaintiff from regaining access to firearms by filing a petition for a risk protection order. Doc. 37-24 at 3.  After a hearing on August 31, 2020, the petition was denied on September 17. *Id.* at 3-5.  The court found there was "insufficient evidence that [Plaintiff] poses a significant danger to himself or others by owning or possessing a firearm," and that a temporary risk protection order had only been issued "due to isolated marital issues." *Id.* at 3.

Plaintiff remained on paid administrative leave for the remainder of his employment with the TPD. *See* Doc. 37-2 at 17.  He was ordered to participate in a fitness for duty examination before he could return to active duty. *See* Doc. 37-4 at 168-69; Doc. 12 ¶ 30.  Plaintiff was referred to Dr. Stephen O'Neal for the examination. Doc. 37-8 at ¶ 4.  Soon afterward, Dr. O'Neal informed Defendant that he could not declare Plaintiff fit for duty without seeing his treatment records from the VA, but that Plaintiff had refused to sign a release form authorizing him to access them. *Id.*  In a meeting on September 17, 2020, DeFelice ordered Plaintiff to sign the release. *Id.*  Plaintiff did so, but revoked it the next day by contacting the VA. *Id.*; Doc.

48 at 2.  Defendant states that it did not learn about the revocation until much later. *Id.*; Doc. 49 at 7-8.

Plaintiff requested a different examiner, and in early December he was referred, with his consent, to Dr. Richard Cipriano. Doc. 37-8 ¶¶ 6-7.  On December 16, 2020, Dr. Cipriano informed Defendant that Plaintiff had refused to release his VA records, and that he could not find him fit for duty until he did so. *Id.* ¶ 8; Doc. 37-19 at 2. Plaintiff remained on paid administrative leave.

Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Rights on February 23, 2021. Doc. 37-21.  He alleged discrimination and retaliation based on his race, religion, and disability. *Id.*

On April 14, 2021, a meeting occurred at the request of Plaintiff's union attorney, who asked that Plaintiff be given a final opportunity to comply with the order to sign the release for his VA records. Doc. 37-8 ¶ 9.  At the meeting, Tampa Police Chief Brian Dugan ordered Plaintiff to execute the release. *Id.*  Plaintiff "said he would not comply." *Id.*; *see also* Doc. 48 at 2.  Plaintiff was terminated on April 28, 2021. Doc. 37-22.  In a Notice of Disciplinary Action dated April 21, 2021, Defendant informed Plaintiff that he was being terminated for disobeying the orders to complete the fitness for duty evaluation, which constituted insubordination. *Id.*

Plaintiff initiated this action on December 8, 2021, and the case was subsequently removed to this Court. Docs. 1, 1-1.  He alleges that Defendant discriminated and retaliated against him based on his disability in violation of the

ADA. Doc. 12.  In Count I, he alleges that Defendant discriminated against him by, immediately after learning of his disability on August 5, placing him on administrative leave, subjecting him to a risk protection hearing, forcing him to undergo a fitness for duty evaluation, and requesting his medical records. *Id.* ¶¶ 50-57.  In Count II, he alleges that he was terminated in retaliation for filing the EEOC charge two months earlier. *Id.* ¶¶ 59-65.[3]

Defendant now moves for summary judgment as to both counts.

## II.    LEGAL STANDARD

Summary judgment is appropriate only when the court is satisfied that "there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law," after reviewing the "pleadings, the discovery and disclosure materials on file, and any affidavits[.]" Fed. R. Civ. P. 56(c)(2).  In determining whether a genuine issue of material fact exists, the Court must consider all the evidence in the light most favorable to the nonmoving party. *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1164 (11th Cir. 2003).  Issues of fact are "genuine only if a reasonable jury,

---

[3] In addition to initiating this action, Plaintiff also filed two grievances through the procedures provided by his union contract.  The first, filed on December 17, 2021, argued that Defendant had no right to require the disclosure of his medical records as part of a fitness for duty evaluation. Doc. 37-20.  He filed a second grievance after he was terminated, contending that he had complied with the order to complete a fitness for duty evaluation, and that the requirement to disclose his VA records was outside the scope of the evaluation and his union contract. Doc. 37-33.  Both grievances were addressed in the same arbitration hearing in May 2022. Doc. 37-2.  In an Award and Opinion dated September 27, 2022, the arbitrator concluded that Defendant did not violate the union contract by ordering Plaintiff to sign the VA release as part of a fitness for duty evaluation, which it found was justified. *Id.* at 41.  He also determined that Plaintiff should be given another opportunity to undergo the evaluation, which would include disclosing his VA records, and that he should be reinstated without back pay if he agreed to do so. *Id.*  Plaintiff has declined to do so.

considering the evidence presented, could find for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  A fact is "material" if it may affect the outcome of the suit under governing law.  *Id.*

The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  "Only when that burden has been met does the burden shift to the non-moving party." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

"[I]n order to survive summary judgment, the nonmoving party must set forth specific facts showing there is a genuine issue for trial." *Johnson v. New Destiny Christian Ctr. Church, Inc.*, 826 F. App'x 766, 770 (11th Cir. 2020) (citing *Anderson*, 477 U.S. at 249-50).  "[U]nsupported 'conclusory allegations' do not suffice." *Middlebrooks v. Sacor Fin., Inc.*, 775 F. App'x 594, 596 (11th Cir. 2019).  Likewise, "[a] 'mere existence of a scintilla of evidence' cannot suffice to create a genuine issue of material fact." *Johnson*, 826 F. App'x at 770 (quoting *Anderson*, 477 U.S. at 252).

### III.   DISCUSSION

### A. ADA Discrimination (Count I)

The ADA prohibits discrimination in employment "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a).   A plaintiff alleging disability discrimination must demonstrate that: (1) he is disabled; (2) he was a "qualified individual" when he was terminated, and (3) he was discriminated against on account of his disability. *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016) (citation omitted).

Where a plaintiff relies on circumstantial evidence of discrimination, rather than direct evidence, courts apply the *McDonnell-Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1193 (11th Cir. 2004).   First, the plaintiff must establish a prima facie case of disability discrimination through the three elements above. *Id.* The burden then shifts to the employer "to articulate a legitimate, non-discriminatory reason" for the adverse employment action. *Id.*   The employer's burden is "exceedingly light." *Perryman v. Johnson Prods. Co.*, 698 F.2d 1138, 1142 (11th Cir. 1983).   If the employer meets its burden, the plaintiff will not survive summary judgment unless he presents sufficient evidence to create an issue of fact that the articulated reason was a pretext for discrimination. *Cleveland*, 369 F.3d at 1193; *Duckworth v. Pilgrim's Pride Corp.*, 764 F. App'x (11th Cir. 2019).

In Count I of the Amended Complaint, Plaintiff asserts that he was discriminated against because of his disability when, after becoming aware of his disability, Defendant subjected him to a risk protection hearing, suspended him, made him undergo a fitness for duty exam, requested all his medical records, and ultimately terminated him. Doc. 12 ¶¶ 54-56.  He does not offer direct evidence of discrimination, instead relying on the fact that the adverse actions immediately followed the disclosure of his disability as evidence that they were causally related. *Id.*

Defendant argues that it is entitled to summary judgment as to the discrimination claim. Doc. 37.  Although it concedes there are genuine issues of fact with respect to the first and second elements of prima facie discrimination, Defendant asserts it is entitled to summary judgment because Plaintiff cannot prove the third element: that he experienced discrimination because of his disability. *Id.* at 19.  Specifically, Defendant argues that Plaintiff did not experience an adverse employment action because he was placed on paid leave, the fitness-for-duty examination was lawful, and the risk protection hearing did not result in a loss of freedom. *Id.* at 19-22.  Moreover, it contends that Plaintiff has not shown that its articulated reason for taking those actions was pretextual. *Id.* at 22.

In response, Plaintiff argues that he has established a prima facie case of discrimination. Doc. 44 at 6.  He asserts that the events and actions Defendant identifies that led up to the August 2020 incident are irrelevant because they were so minor that they did not result in discipline, let alone a fitness for duty examination; and that events occurring after he was placed on administrative leave cannot be

considered because the adverse action was already taken by then. *Id.* at 7-8.  Plaintiff does not use the term "pretext," but argues that Defendant's decision to remove him from duty "was squarely based on Plaintiff's disclosure of his disability," because, "[w]hen Defendant removed Plaintiff from duty, Plaintiff had not exhibited any new or different behaviors which would have justified Defendant's actions." *Id.* at 8.  In addition, Plaintiff contends that the risk protection petition Defendant filed against him resulted in a significant loss because he was deprived of his property and his Second Amendment rights for nearly a month. *Id.* at 8-9.

Defendant replies to point out that Plaintiff has apparently abandoned his original claim that he was terminated because of his disability. Doc. 49 at 2.  In addition, it continues to argue that neither a paid suspension nor a fitness for duty examination is an adverse employment action. *Id.* at 3-4.  Defendant also argues that Plaintiff has failed to dispute its evidence regarding the non-discriminatory reason for the allegedly adverse actions. *Id.* at 5-6.

For the purpose of the motion for summary judgment, the Court need not resolve the parties' disputes regarding whether Plaintiff experienced an adverse employment action under the third element of a prima facie case. *See Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1228 (11th Cir. 2002) (assuming for the purpose of pretext analysis that plaintiff made out a prima facie case of discrimination).  As in *Scott*, the Court will assume, *arguendo*, that Plaintiff established a prima facie case of discrimination.  However, Defendant is entitled to summary judgment because Plaintiff has not met its burden of proof under the final step of the *McDonnell-Douglas*

framework, because a reasonable jury could not conclude that Defendant's proffered reason for the adverse actions was discriminatory.

First, Defendant has adequately satisfied its "extremely light burden" of identifying a legitimate, non-discriminatory reason for the actions it took against Plaintiff. *See Perryman*, 698 F.2d at 1142.  Defendant has produced evidence that Plaintiff was placed on administrative leave, required to take a fitness for duty exam, and recommended for a risk protection order because of behavior that Captain DeFelice observed on August 5, 2020.  DeFelice gave a detailed, written description of the behavior within a day of observing it. Doc. 37-4.  He described that Plaintiff was displaying signs of severe stress and anxiety, which included erratic angry outbursts, difficulty focusing, talking to himself while in conversation with DeFelice and another officer, incoherent mumbling, hitting himself on the head, and calling himself stupid. *Id.* at 3.  DeFelice's account of this behavior is corroborated, at least in part, by Polk's description of Plaintiff's similarly erratic behavior the following day, as well as the concerning text message Plaintiff sent Polk shortly after speaking with DeFelice. *See* Docs. 37-7, 37-13.  When the described behavior is viewed in the context of someone who was under investigation for child abuse,[4] had been the subject of two calls for domestic disputes within 24 hours, and whose job performance was already under review, *see id.* at 2, it was not objectively unreasonable to conclude that Plaintiff should

---

[4] The child abuse investigation was not closed until August 13, 2020. Doc. 37-24 at 35.

not have access to firearms or continue serving as a police officer without an examination.

As the Eleventh Circuit has explained,

> The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55, (1981)). The reason must be "one that might motivate a reasonable employer." *See Chapman v. AI Transp.*, 229 F.3d 1012, 1030–31 (11th Cir. 2000). The employer, therefore, only needs to "produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Tex. Dep't of Cmty. Affairs*, 450 U.S. at 257, 101 S.Ct. 1089.

*Duckworth*, 764 F. App'x at 853.  Plaintiff's described behavior certainly "might motivate a reasonable employer" to remove a police officer from duty, require him to undergo a fitness for duty exam before returning, and attempt to remove his access to firearms. *See id.*  Based on the proffered evidence, a jury could rationally conclude that the adverse actions were not motivated by discriminatory animus.  Defendant has met its burden.

Accordingly, the burden of proof shifts back to Plaintiff to provide or identify evidence from which a reasonable juror could conclude that the non-discriminatory reason was pretextual. *See Duckworth*, 764 F. App'x at 854 ("A plaintiff must meet the employer's given reason head on and rebut it[.]"), citing *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).  But Plaintiff has not done so.  Rather, his response in opposition to Defendant's motion for summary judgment ignores the entire existence of the report of Plaintiff's behavior on August 5, except to claim, vaguely

and without support, that Plaintiff "had not exhibited any new or different behaviors which would have justified Defendant's actions." Doc. 44 at 8.  Yet, as Defendant correctly observes, "Plaintiff does not dispute DeFelice's account or allege mendacity." Doc. 49 at 5.  He does not argue that DeFelice's description of his behavior is incredible.  Nor does he cite any evidence that contradicts or casts doubt on it. *See* Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact…is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record…; or (B) showing that the materials cited do not establish the…absence of a genuine dispute[.]"); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) ("Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and…designate 'specific facts showing there is a genuine issue for trial'"); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) ("The plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."); *see also Ring v. Boca Ciega Yacht Club Inc.*, 4 F.4th 1149, 1163-64  (11th Cir. 2021) (plaintiff's failure to even "attempt to rebut" one of defendant's offered reasons for adverse actions entitled defendant to summary judgment).

Indeed, Plaintiff's own account of August 5 does not fully contradict DeFelice's.[5]  In his rebuttal to Defendant's response to the EEOC charge, he explained that DeFelice's description of his behavior "discounts the circumstances of the

---

[5] The Court may, but is not required to, consider materials in the record that are not cited. *See* Fed. R. Civ. P. 56(c)(3).  Nonetheless, it has reviewed the record in an attempt to determine Plaintiff's position regarding DeFelice's account, as the response in opposition to summary judgment lacks any challenge to it.

encounter," given the stressful situation Plaintiff was under at the time. Doc. 37-4 at 251.  Plaintiff seemed to agree with DeFelice's characterization that he was "very emotional, exhibiting signs of severe stress and anxiety," but argued that the obvious cause for the behavior was the unusual nature of the events rather than his mental health. *Id.*  He also acknowledged that the stress he experienced "probably came across as increased anxious behavior as the night progressed." *Id.*  Plaintiff's deposition testimony on the same topic was more equivocal:

> "I was agitated, but I was calm….I was extremely calm[,] for the situation…. I kept it together.  I may have shown a, you know, facial expression or I may have rubbed my hands—I know I rubbed my hands on my forehead out of frustration.  I was embarrassed, but I was calm."

*Id.* at 167-68.  Plaintiff denied hitting himself in the head. *Id.* at 168.[6]

A party's own self-serving statements based on personal knowledge or observation can, in some cases, defeat summary judgment. *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018).  Here, however, Plaintiff's equivocal statements are not enough to establish a genuine dispute of fact regarding his behavior on August 5.  "A mere scintilla of evidence…will not suffice" to defeat summary judgment; rather, "there must be enough of a showing that the jury could reasonably find for that party."

---

[6] Similarly, in Plaintiff's arbitration hearing testimony he agreed that he was "very" upset that night, but stated that DeFelice's claim that he was hitting himself in the head was "absolutely not true." Doc. 37-3 at 51, 137-38.  He testified, while demonstrating, that he had his head in his hands and he was rubbing his hands down his face, as if to convey "I can't believe this is happening." *Id.* at 200.  Testifying later, DeFelice agreed the gesture he observed on August 5 was similar to the one Plaintiff demonstrated but said it was "a lot more aggressive in nature." *Id.* at 301.

*Brooks v. Cnty. Comm'n of Jefferson Cnty.*, 446 F.3d 1160, 1161 (11th Cir. 2006) (citation omitted). Plaintiff's denial that he hit himself in the head, while largely conceding that the rest of DeFelice's account of his behavior is accurate, is no more than a "mere scintilla" of evidence in his favor that is insufficient to create a showing by which the jury could find for him. Viewing the evidence in the light most favorable to Plaintiff, he has failed to establish a genuine question of fact that the articulated reason for taking adverse actions against him on August 5 was pretextual.

Moreover, Plaintiff's claim that DeFelice should have viewed his behavior in the context of an isolated, upsetting situation rather than as a mental health crisis does not create an issue of fact. A plaintiff "cannot succeed by simply quarreling with the wisdom of" the employer's given reason. *Duckworth*, 764 F. App'x at 854. "We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." *Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999). The question is whether the employer was dissatisfied with the plaintiff for "non-discriminatory reasons, even if mistakenly or unfairly so" or whether it instead merely used this incident "as cover" for discrimination. *Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). Absent any evidence that the true reason for the adverse actions Defendant took against Plaintiff was discriminatory, this Court cannot second-guess Defendant's judgment.[7]

---

[7] In addition, to the extent Plaintiff relies on the temporal proximity between his disclosure of his mental illness and the adverse actions taken against him as the sole evidence of pretext, it

Finally, the Court agrees with Defendant that Plaintiff appears to have abandoned his initial claim that his termination was the result of disability discrimination. *See Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is on the parties to formulate arguments; grounds alleged in the complaint but not relied upon in [opposing] summary judgment are deemed abandoned."). To the extent he has not, the Court finds, for the reasons described in Section B, *infra*, that he has failed to offer evidence establishing that the insubordination charge was a pretext for disability discrimination. Because there is no evidence from which a reasonable jury could make a finding of discrimination, Defendant is entitled to summary judgment as to Count I.

## B. ADA Retaliation (Count II)

Title V of the ADA prohibits retaliation against an individual for opposing any discriminatory act or practice or making a charge of disability discrimination. 42 U.S.C. § 12203(a). The plaintiff can establish a prima facie case of retaliation by proving the following elements:

1. he engaged in a statutorily protected expression,
2. he suffered an adverse employment action, and
3. there was a causal connection between the two.

---

is unavailing. The observed behavior took place at the same time as the disclosure. As noted, there is no other evidence from which a jury could conclude that the disclosure was more likely—to even as likely—to cause the adverse actions than the observed behavior. Therefore, the temporal proximity alone is not enough to create a genuine issue of fact as to the credibility of the articulated reason.

*Frazier-White v. Gee*, 818 F.3d 1249, 1258 (11th Cir. 2016).  A retaliation claim based on circumstantial evidence follows the same *McDonnell-Douglas* burden-shifting framework as a discrimination claim.  Therefore, once the plaintiff has established a prima facie case of retaliation, the burden of proof shifts to the employer to articulate a legitimate, non-retaliatory explanation for taking the adverse action.  *See Ring v. Boca Ciega Yacht Club Inc.*, 4 F.4th 1149, 1163 (11th Cir. 2021) (citation omitted).[8]  If the employer meets its burden, the plaintiff must show that the proffered reason is a pretext for retaliation. *Id.*  A reason cannot be proved to be a pretext for retaliation unless it is shown both that the reason was false and that retaliation was the real reason. *Id.*, citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

In Count II of the Amended Complaint, Plaintiff alleges that he was terminated on April 28, 2021, in retaliation for filing an EEOC charge of discrimination on February 23, 2021. Doc. 12 ¶¶ 41-42, 61-63.  He alleges that he would not have been terminated if he had not filed the EEOC charge. *Id.* ¶ 64.

In its motion for summary judgment, Defendant argues that Plaintiff has failed to offer evidence from which a jury could find a causal relationship between the EEOC charge and the termination. Doc. 37 at 23.  It asserts that temporal proximity of more

---

[8] The *Ring* Court noted that ADA retaliation claims are evaluated identically to claims under Title VII of the Civil Rights Act. *Ring*, 4 F.4th at 1163, citing *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997); *see also Double v. FedEx Ground Package System, Inc.*, 572 F. App'x 889, 895 (11th Cir. 2014) ("We evaluate ADA…retaliation cases under [the same framework]").

than two months is not enough to prove causation, nor can temporal proximity alone establish that the non-retaliatory reason Defendant offered was pretext. *Id.* at 23-25.

In response, Plaintiff contends that the causation element of a prima facie case is construed broadly, and he points out that there is greater temporal proximity between the termination and the EEOC charge than the order to release his VA medical records, which occurred five months earlier. Doc. 44 at 9-11. Plaintiff argues that the temporal connection would allow a reasonable jury to conclude that Defendant terminated Plaintiff because he filed an EEOC charge. *Id.* Defendant argues in its reply that the termination was based on Plaintiff's failure to comply with the April 14, 2021, order by the police chief, rather than the original order five months earlier. Doc. 49 at 9.

For this count, too, the Court will bypass the question of whether Plaintiff has established a prima facie case of retaliation in favor of a pretext analysis. Assuming, *arguendo*, that he has, the Court finds that Plaintiff has failed to establish a genuine issue of material fact as to whether the insubordination charge was a pretext for retaliation. Defendant is entitled to summary judgment as to Count II as well.

Defendant has offered evidence that Plaintiff was terminated for insubordination after he failed to comply with a personal order of the police chief on April 14, 2021, to sign the release for his VA records. *See* Doc. 37-22; Doc. 37-8 ¶ 9. Defendant has met its light burden of proffering a legitimate, non-retaliatory reason for the adverse action. Accordingly, the burden of proof shifts back to Plaintiff to establish that the reason was pretext.

21

As described in Section III(A), *supra*, a plaintiff seeking to establish pretext cannot "merely quarrel[] with" the employer's proffered reason, and must instead "meet it head on and rebut it[.]" *Thomas v. Dolgencorp, LLC*, 645 F. App'x 948, 951 (11th Cir. 2016).   In doing so, the plaintiff may "demonstrate[] weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action" such that "a reasonable factfinder could find them unworthy of credence." *McAlpin v. Sneads*, 61 F.4th 916 (11th Cir. 2023) (quotation omitted).   An employer's deviation from its own standard procedures, or its failure to articulate clearly and consistently the reason for an employee's discharge, may serve as evidence of pretext. *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1298-99 (11th Cir. 2006).   Evidence that the employer treated similarly situated individuals, or "comparators," differently, may also demonstrate pretext. *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325-26 (11th Cir. 2020); *see Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1363 (11th Cir.1999) (violation of work rule may be a pretextual reason for termination where other employees who engaged in similar acts were not similarly treated).   Although temporal proximity may establish pretext if it is coupled with other evidence, it is not enough on its own. *Graves v. Brandstar, Inc.*, 67 F.4th 1117, 1123-24 (11th Cir. 2023), citing *Gogel v. Kia Motors Mfg. of Georgia, Inc.*, 967 F.3d 1121, 1138 n.15 (11th Cir. 2020).

Plaintiff concedes that he disobeyed the police chief's April 14 order, *see* Doc. 48 at 2, and he does not argue that this action did not constitute insubordination. *See*

*Lyons v. Miami Dade Cnty. Fire Rescue Dep't*, 470 F. App'x 801, 803 (11th Cir. 2012) (plaintiff "failed to present evidence that would create a genuine issue of material fact about whether the reason for her termination"—her refusal to execute a release to disclose her medical records for a fitness for duty exam—"was discriminatory or unworthy of credence," where she conceded she refused to sign the release); *see also Matamoros v. Broward Sheriff's Office*, 2 F.4th 1329, 1338 (11th Cir. 2021) (upholding summary judgment for employer where the plaintiff "admitted to her attendance issues and never challenged her tardiness reports or sick-leave reviews."). Likewise, in *VanDeWalle v. Leon Cnty. Fla.*, 661 F. App'x 581, 586 (11th Cir. 2016), the court upheld summary judgment for the employer where the plaintiff did not dispute the veracity of the violation that the employer stated was the cause of her termination, nor did she challenge her prior insubordination violations. The court rejected the plaintiff's argument that the employer's reason was pretextual because the termination occurred "mere weeks"—nearly two months—after she engaged in protected activity, given that her disciplinary history had begun the previous fall. *Id.* at 586-87. Here, too, the undisputed insubordination that led to Plaintiff's termination was the culmination of a series of insubordinate acts—repeated refusals to sign the VA release—that began well before his EEOC complaint.

In arguing that he was terminated because of retaliation, Plaintiff does not offer evidence of TPD employees who were not fired despite committing insubordination. He also does not contend that Defendant gave inconsistent explanations for his termination, or that it deviated from its standard procedures in terminating him.

Instead, he offers two reasons that a reasonable jury could find he was terminated out of retaliation: the fact that he was not fired earlier, despite refusing to disclose the records for the past five months, and the temporal proximity between his EEOC charge and the termination. Doc. 44 at 11.  However, neither of Plaintiff's points is directed toward Defendant's specific reason for termination: Plaintiff's refusal to comply with an express, personal order by the police chief of the City of Tampa.  The police chief issued this order for the first and only time just two weeks before terminating him— well after Plaintiff's EEOC complaint in February.  Plaintiff has failed to offer any, let alone adequate, evidence that the insubordination charge was a pretext for retaliation.

Nor is there a genuine issue of material fact because Plaintiff was not terminated after he disobeyed the prior order to disclose his records.  In *Entrekin v. City of Panama City Fla.*, 376 F. App'x 987, 997-98 (11th Cir. 2010), the court upheld summary judgment for the employer, a police department, when it terminated the plaintiff after her fourth insubordination violation, even though department policy permitted termination after only one instance of insubordination.  Similarly, here, it was not unreasonable for Defendant to choose to terminate Plaintiff, an officer with a positive tenure in the department, only after the most egregious and final instance of insubordination.

As the Eleventh Circuit has "repeatedly and emphatically held, employers may terminate an employee for a good or bad reason without violating [the] law." *Flowers*, 803 F.3d at 1338, citing *Damon,* 196 F.3d at 1361 and *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991) (quotations omitted).  Viewing the evidence in the

light most favorable to Plaintiff, he has failed to establish the existence of a genuine dispute of fact as to whether Defendant's proffered reason for terminating him was a pretext for retaliation.  Defendant is entitled to summary judgment as to Count II.

Accordingly, it is **ORDERED**:

1. Defendant City of Tampa's Motion for Summary Judgment (Doc. 37) is **GRANTED**.  As no genuine issues of material fact exist as to Defendant's proffered reasons for its actions, discussed above, and Plaintiff failed to establish that the actions were pretextual, Defendant is entitled to judgment in its favor as a matter of law.

2. The Clerk is directed to enter judgment in favor of Defendant, City of Tampa, terminate any pending motions, and close this case.

**DONE** and **ORDERED** in Tampa, Florida on July 21, 2023.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties